UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LABORERS PENSION
TRUST FUND - DETROIT
AND VICINITY, et al.,

        Plaintiffs,

                                        CASE NO. 04-CV-74714-DT
                                        JUDGE DAVID M. LAWSON
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

CRS POURED CONCRETE
WALLS, INC. et al.,

        Defendants.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANTS' MOTION TO COMPEL DISCOVERY (Doc. Ent. 58)**

**Table of Contents**

I.    **OPINION** ................................................................ **2**
    **A.**    **Introduction** ...................................................... **2**
    **B.**    **Defendants' motion to compel discovery** ............................ **4**
    **C.**    **Applicable Law** ................................................... **4**
    **D.**    **At this point in the litigation, defendants have not shown a substantial need
           for the requested information as contemplated by Fed. R. Civ. P.
           45(c)(3)(B)(i).** ..................................................... **7**
          **1.**    **American has questioned the relevance of the information sought to
                the defense of plaintiff's claims.** ............................... **8**
          **2.**    **American has supported the confidentiality of the information sought,
                and at this point in the litigation defendants' need for the information
                is outweighed by the harm that would result to American.** ........ **10**
    **E.**    **Therefore, the Court need not address whether production would be
           burdensome.** .................................................... **17**

II.    **ORDER** ................................................................ **17**

**I.      OPINION**

**A.      Introduction**

Plaintiffs' original complaint was filed on December 2, 2004.  As described in the

November 23, 2005 amended complaint, this is "a suit for breach of fiduciary duty and of the

fringe benefit provisions of collective bargaining agreements which the defendants, as

employers, entered into with Local Unions 334, 1076 and/or 1191 of the Laborers International

Union of North America, AFL-CIO[,] labor organizations representing employees in an industry

affecting commerce[.]"  (Doc. Ent. 22 ¶ 6).

On or about June 14, 2006, plaintiffs served responses to defendants' second requests for

admissions.  The answer to request for admission 4(C) stated that American "was able to

substantiate through its contemporaneously kept records that it paid a genuine bonus to its

employees that was in addition to meeting its contractual wage and fringe benefit obligations."

After reviewing American's proofs, plaintiffs stated, "[c]onsequently, [American's] bonus

program was determined to be a genuine bonus, paid in addition to the accurately recorded actual

hours worked rather tha[n] as a substitute for actual hours worked as a mechanism for avoiding

contribution liability, and [American] was not charged a contribution indebtedness for those

bonuses."  Doc. Ent. 58-4 Ex. G.

On July 17, 2006, defendants sent a document production subpoena to Jean Pierre Renzi

of non-party American Concrete Wall, Inc. ("American") with a command for documents dated

Monday, July 24, 2006.  Defendants sought the following documents: (1) those "relative to the

Audit that were produced to the Laborers' Fringe Benefit Funds for their review[;]" (2) those

"prepared, or produced by you relative to the Audit of your records[;]" and (3) "those relative to

your payroll payment practices for your employees generally, and specifically, your payroll

payment procedures and practices for bonuses paid to employees."  Furthermore, defendants

seek "the name of the person who dealt with Laborers Fringe Benefit Funds on your behalf."

Doc. Ent. 58-3 Ex. A.  In a letter dated August 3, 2006, American's counsel informed defense

counsel of American's objections to the subpoena based upon Fed. R. Civ. P. 45(c)(2)(B).  Doc.

Ent. 58-3 Ex. B.[1]

On August 2, 2006, defendants deposed Keith Messing, plaintiffs' auditor.  Doc. Ent. 58-

1 ¶¶ 11-12; Doc. Ent. 58-4 Ex. H; Doc. Ent. 63-8 Ex. N.  Messing testified that "there is no

protocol in terms of what are adequate records or not adequate records[,]" and "[he does not]

have any standards by which [he] determine[s] whether or not records . . . tie out adequately or

not[.]" Doc. Ent. 63-8 Ex. N at 106-107.  Apparently referring to plaintiffs' June 14, 2006

response to defendants' second request for admissions No. 4(C), Messing testified that

American's payroll records stated "everyday, the amount of foot poured per employee[,]" and

"[t]he time cards had the lineal feet poured[.]"  Doc. Ent. 58-4 Ex. H at 153-154.  Messing did

not correct defense counsel's description of the protocol as oral, unwritten and discretionary.

Doc. Ent. 58-4 Ex. H at 163.

Messing's deposition continued on August 10, 2006.  At that time he produced a

summary of his firm's payroll audit procedures; guidelines for conducting audits on poured wall

contractors for the Laborers Metropolitan Detroit Fringe Benefit Funds; a copy of his firm's

discrepancy sheet for the poured wall audits, poured wall companies; the Laborers' Joint

---

[1]Defendants' motion suggests that American's objection was untimely.  Doc. Ent. 58-1 ¶
2.  On the other hand, in an August 3, 2006 letter, American contended that Mr. Renzi first
obtained the subpoena after the date for compliance and contended that the objection was timely.
Doc. Ent. 58-3 Ex. B.  American relies upon that letter in arguing that it complied with Fed. R.
Civ. P. 45(c)(2)(B).  Doc. Ent. 62 at 6 ¶ 2.

Delinquency Committee Collection Policy & Procedure Manual; and the agreement between

Messing's firm and the Detroit Laborers' Fringe Benefit Fund.  Doc. Ent. 63-8 Ex. N at 3-4,

Exhibits J (63-4), K (63-5), L (63-6) & M (63-7).

**B.    Defendants' motion to compel discovery**

On August 21, 2006, defendants filed a motion to compel discovery.  (Doc. Ent. 58).

Defendants seek "written responses to [their] document requests;" "examination and copying of

the documents requested;" reimbursement "for the costs and attorneys fees of $1,500.00

associated with making this motion;" and "such further relief as is just and appropriate."

American filed a response (Doc. Ent. 62) and defendants filed a reply (Doc. Ent. 63).

On December 12, 2006, the parties appeared for oral argument.  Defendants were

represented by attorney Matt W. Zeigler, and American was represented by attorney David A.

Lawrence.  Speaking on behalf of the plaintiffs was attorney George H. Kruszewski.  Following

oral argument, I took defendants' motion under advisement.

**C.    Applicable Law**

**1.**    Of particular relevance to the instant motion are two Federal Rules of Civil Procedure -

Rules 26 and 45.  Fed. R. Civ. P. 26(b), which governs the scope and limits of discovery,

provides in part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant
> to the claim or defense of any party, including the existence, description, nature,
> custody, condition, and location of any books, documents, or other tangible things
> and the identity and location of persons having knowledge of any discoverable
> matter.  For good cause, the court may order discovery of any matter relevant to
> the subject matter involved in the action.  Relevant information need not be
> admissible at the trial if the discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.  All discovery is subject to the limitations
> imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b)(1).

Also, Fed. R. Civ. P. 26(c), which concerns protective orders, provides that "[u]pon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way[.]" Fed. R. Civ. P. 26(c)(7).

"To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325-326 (10th Cir. 1981) (footnotes and citations omitted).

**2.**     Fed. R. Civ. P. 45 governs subpoenas. As an initial matter, "[t]he reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) (citing cases).

**a.**     Rule 45(c) concerns the protection of subpoenaed persons. In part, it provides:

5

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expenses on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1).

Rule 45(c)(3) sets forth ways in which the Court may quash or modify the subpoena.  For example, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies, or . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). "Clause (c)(3)(A)(iv) requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Builders Association of Greater Chicago v. City of Chicago*, 215 F.R.D. 550, 552 (N. D. Ill. 2003).

Furthermore, "[i]f a subpoena . . . requires disclosure of a trade secret or other confidential research, development, or commercial information, . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions."  Fed. R. Civ. P. 45(c)(3)(B)(i).

**b.**     Rule 45(d) addresses duties associated with responding to a subpoena.  In part, it provides:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

6

documents, communications, or things not produced that is sufficient to enable
the demanding party to contest the claim.

Fed. R. Civ. P. 45(d)(2).

**D.    At this point in the litigation, defendants have not shown a substantial need for the requested information as contemplated by Fed. R. Civ. P. 45(c)(3)(B)(i).**

Defendants seek documents "such as W-2s, time records and payroll records substantiating the daily bonus according to the subpoena[.]" Doc. Ent. 58-1 ¶ 4. According to defendants, the documents they seek are articulated in plaintiff's March 17, 2004 letter to American:

> Employee earning records by calendar year, showing each employee's name, address, social security number, occupation, straight time and overtime hours worked, rate of pay, gross earnings, all deductions, and net pay.
>
> Copy of W-2 form filed for each employee annually.
>
> Copy of W-3 form filed for each year.
>
> Copy of all 1099's issued annually.
>
> Copy of current year M.E.S.C. Form 1017 (employers quarterly wage detail report).
>
> Copy of 1096 form filed for each year.

Doc. Ent. 58-1 ¶ 8, Doc. Ent. 58-4 Ex. E.

Defendants argue that American is "required to produce subpoenaed documents to [d]efendants when those identical records have already ben assembled, produced and reviewed by [p]laintiffs' [a]uditors relative to the issues identical to the instant matter[,]" "the lack of auditing standards and the [p]laintiffs' [a]uditors discretionary review of employer records require[s] that the only records that have met the unarticulated standards be produced to establish standards that are otherwise not articulated[,]" "[d]efendants ma[d]e a good faith effort to confer

7

with [American] in order to secure the disclosures without court action[,]" and "there [is no]
undue burden or undue hardship on [American] in producing these records[.]"

American responds that "[t]he documents sought by [d]efendant's [s]ubpoena to non-
party American [are not] relevant to this case[;]" "the documents sought by [d]efendant's
[s]ubpoena to non-party American [are] confidential, requiring a showing of necessity by
[d]efendant[;]" "the subpoenaed documents [are not] necessary[;]" and "[d]efendant's
[s]ubpoena for the requested documents place[s] an undue burden or hardship on American[.]"
Doc. Ent. 62 at 3.  American requests that the Court deny defendants' motion, quash or
otherwise modify the subpoena, and award compensation for disclosure of the confidential
commercial information, including costs and attorney fees associated with the instant motion.
Doc. Ent. 62 at 12.

Defendants reply that "[w]here [p]laintiffs' [f]unds auditing standards do not exist, and
what written policies and procedures that do exist do not address the issue of employee bonuses,
[defendants should] be allowed to seek discovery from the single company whose employee
bonus program has met [p]laintiffs undefined standard[,]"  "the employee payroll records sought
by [defendants'] records that are 'trade secret confidential research, development or commercial
information' or 'privileged or other protected matter' [are not] protected under Rule 45[,]" and
"American [will not] be subject to undue hardship or incur any extra expense in producing the
sought records[.]"  Doc. Ent. 63-1 at 2.

**1.    American has questioned the relevance of the information sought to the defense of
plaintiff's claims.**

Defendants argue that "[b]ecause [p]laintiffs lack any auditing standards and lack any
written policy guidelines regarding the payment of other compensation to employees,

[d]efendants require that [American] produce the documentation that they produced to the auditors regarding the bonus computation in order to properly defend against the discretionary standards that [p]laintiff funds applied to the audit of the [d]efendants' records."  Doc. Ent. 58-1 ¶ 13.

American characterizes defendant's argument as, "Plaintiff Fund treated American more favorably and requests American's wage and payroll documentation in hopes of supporting this theory."  Doc. Ent. 62 at 5.  American contends that its "wage and payroll practices are completely irrelevant to the Plaintiff Fund's claim for unpaid contributions against Defendant[,]" and "any documentation regarding the Plaintiff Fund's audit of American is irrelevant to this case and the requested documentation is confidential."  Doc. Ent. 62 at 7 ¶¶ 9, 14.

On one hand, it is not entirely clear that a non-party has standing to raise a relevance objection to the subpoena.  *See, e.g., Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115, 123 (E. D. Mich. 1977) ("the Court has serious reservations about the propriety of a non-party deponent moving to quash a subpoena duces tecum on the ground that the information sought is not relevant to the pending action."), *In re Agent Orange Product Liability Litigation*, 97 F.R.D. 427 (E. D. N. Y. 1983) ("it is not clear that a nonparty has standing to object on the ground of relevance[.]").

On the other hand, "courts have held that non-parties may raise relevancy objections to subpoenas."  *Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 664453, *7-*8 (N. D. Ill. 2001) (concluding that "the non-party movants and objectors have standing on their own behalf to challenge the relevance of the materials sought in the subpoenas and are not limited to arguing to the burdensomeness of responding to the subpoena in their particular situations.");

9

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335 (N. D. Cal. 1995) (finding misguided the argument that "a non-party, lacks standing to assert non-relevance in seeking to quash a subpoena."); *Fein v. Numex Corp.*, 92 F.R.D. 94, 96 (S.D.N.Y. 1981) (as to standing to object on the basis of relevancy, "Rule 26(b) of the Federal Rules of Civil Procedure limits discovery to relevant matters, and makes no distinction in this regard between information in the hands of parties and that held by nonparties[,]" "it is difficult to imagine a considered evaluation of burdensomeness in the abstract, without balancing the degree of burdensomeness against the extent to which the discovery sought is relevant to the issues in the litigation[,]" and "Andersen could yet be named as a defendant in this action.").

Assuming that a non-party can object to a subpoena on the basis that it seeks irrelevant documents, American has substantiated its argument.  At the hearing, plaintiffs' counsel stated that the audit of defendant CRS stands on its own.  This statement is consistent with American's representation that "[p]laintiff's position on the Subpoena to American and this Motion is that the requested information is entirely irrelevant and should not be produced."  Doc. Ent. 62 at 9.

**2.     American has supported the confidentiality of the information sought, and at this point in the litigation defendants' need for the information is outweighed by the harm that would result to American.**

American argues that even if the information sought was relevant, it is confidential.  Doc. Ent. 62 at 9.  In this regard, American points to the Michigan Bullard-Plawecki Employee Right-to-Know Act (Mich. Comp. Laws §§ 423.501-423.512).  Although American's brief does not cite the particular portion of the Act on which it relies, the Act provides in part that "[a]n employer shall review a personnel record before releasing information to a third party and, except when the release is ordered in a legal action or arbitration to a party in that legal action or

10

arbitration, delete disciplinary reports, letters of reprimand, or other records of disciplinary action which are more than 4 years old."  Mich. Comp. Laws § 423.507.  According to American, "the W-2's and other wage/payroll information sought by [d]efendant contain not only the financial information but the employee's name and other identifying information which employees expect, and the law requires, be maintained in confidence."  Doc. Ent. 62 at 10.

American also points to the identity of its employees/trades people and the mechanics of American's bonus plan for those people as constituting "confidential commercial information." Doc. Ent. 62 at 10.  Considering that American and defendant CRS are "antagonistic, aggressive competitors, not only for concrete wall customers, but for quality and reliable employees and trades people[,]" American argues, it "is entitled to protect the identity of its employees/trades people and one of the methods by which it keeps its excellent employees/trades people; i.e., its bonus system."  Doc. Ent. 62 at 10-11.

During the hearing, defense counsel argued that the information sought was not confidential but was ordinarily kept business records.  In any event, defense counsel was willing to enter into an attorneys' eyes only and experts' eyes only protective order.  Furthermore, defense counsel stated the records would suffice - he does not need written answers.[2]  He also stated that he had not deposed someone from American and that a deposition may not be necessary.

I have taken into consideration defendants' statements that plaintiffs lack auditing guidelines - specifically written policies and procedures regarding employee bonuses; that

---

[2]The Court assumes that defense counsel's statement addresses the relief sought in paragraph A of its motion, "[p]rovide written responses to [d]efendants' document requests[.]" Doc. Ent. 58-1 at 2.

defendants should be permitted discovery from "the only company (American) whose employee bonus program has met [the] undefined and unarticulated standards[;]" that American is a party to the same collective bargaining agreement as defendant CRS; that "[t]he <u>only</u> documentation that exists is from the practice of American in paying its employees on a per foot bonus procedure[;]" that "the only way to establish what the bonus procedure [is] that avoids the calculation of benefits on bonuses by the Plaintiff Funds is from the actual records of American[;]" that "the only document that exists in the Plaintiffs' auditor's records to substantiate the bonus computation is .. . well outside the audit period[;]" and that the "same auditing standards as applied to American must be applied to CRS."  Doc. Ent. 63-1 at 5-7. Also, I have taken into consideration defendants' offer to handle the requested information subject to a protective order as mentioned in their August 4, 2006 letter to American's counsel, Doc. Ent. 58-3 Ex. D, their September 12, 2006 reply, Doc. Ent. 63-1 at 9, and their December 12, 2006 oral argument.  Furthermore, I have considered defendants' argument that "[t]he documents as requested by the [p]laintiff [f]unds in the audit of the records of American are essential to the determination of how their bonus was calculated[,]"[3] that defendants' expert needs American's records to determine whether defendants' records meet the bonus computation standards that plaintiffs found acceptable for American, and that "the Plaintiffs['] Plans have no substantiation of what they say is sufficient for bonus computation."  Doc. Ent. 63-1 at 8.

Nonetheless, I conclude that, under Fed. R. Civ. P. 45(c)(3)(B)(i), defendants' motion to

---

[3]Defendants maintain that "[i]t is the payroll records, the hours worked, hours reported to the Plaintiff Funds and wages paid and the documentation supporting the bonus calculation that[,] in conjunction with the regular hours reported for the employees[,] . . . will help understand the bonus procedure approved by Keith Messing."  Doc. Ent. 63-1 at 8.

compel should at this time be denied without prejudice.  "Fed.R.Civ.P. 45(c)(3)(B) allows a subpoena requesting disclosure of a trade secret or confidential commercial information to be quashed unless the party serving the subpoena can show a substantial need for the requested discovery.  In order to resist discovery, movants must establish that the information sought is a trade secret, and demonstrate that its disclosure might be harmful.  If these requirements are met, the burden shifts to [the party serving the subpoena] to establish that disclosure of the trade secrets is both relevant and necessary.  This Court then must balance the need for the disclosure against the injury that would result from that disclosure.  If proof of relevancy or need is not established, discovery should be denied.  The fact that a nonparty is involved makes no difference; the Rules make no distinction between parties and non-parties in respect to the type of information sought or the manner in which information is to be obtained."  *R & D Business Systems .v Xerox Corp.*, 152 F.R.D. 195, 196-197 (D. Colo. 1993) (internal citations omitted).

Applying the R & D Business Systems analysis to the case at bar, I conclude that defendants' motion to compel should be denied.  First, I am convinced of the sensitive commercial nature of American's bonus plan details.  At the hearing, American's counsel stated that its bonus plan is secret, because it is a method by which American keeps good workers happy.  Counsel for American admitted that the documents have been released to plaintiff; however, he has a problem releasing them to competitors.  Counsel for American further registered his position that an attorney eyes only protective order would be impractical, because defendant(s) will want to use the information and it will appear in briefs.

Second, I am convinced that disclosure of the information could be harmful to American.  Counsel for American has alleged that defendant is an adversarial competitor - for customers and

13

employees. "Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987), citing *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Coca Co.*, 107 F.R.D. 288, 293, 299 (D. Del. 1985); *R & D Business Systems*, 152 F.R.D. at 197; *Everco Industries, Inc. v. O. E. M. Products Co.*, 362 F.Supp. 204, 206 (N. D. Ill. 1973) ("Even though this is an action for copyright infringement and unfair practices, it is important to remember that the Plaintiff and Defendant are competitors. By the very nature of the parties business relationships, there are certain documents which are confidential and should not be discovered without sufficient cause.") (citing cases); *Koch v. Koch Industries, Inc.*, 1992 WL 223816, *19 n.4 (D. Kan. 1992) (recognizing that "certain circumstances, such as the harm from disclosing financial information to a competitor, would justify delaying discovery of financial records until trial.") (citation omitted).

I conclude American's argument is not thinly veiled. *R. J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 Fed.Appx. 880, 882 (3d Cir. 2002) (considering Fed. R. Civ. P. 45(c)(3)(B)(i), trade secret privilege log was deficient and entity resisting discovery could not show good cause to restrict disclosure based upon harm); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592-593 (D. Kan. 2003) (defendant's "broad, general assertion that production of its operational and payroll bank account records would put it at a competitive disadvantage with [plaintiff], as well as any other carrier, is not sufficient to meet this burden. The Court will therefore decline to grant the motion to quash under Rule 45(c)(3)(B)(i)."). American contends that the Court should be suspect of defendants' claims that the information sought is relevant, because "[d]efendant seeks information from its direct and very adversarial competitor[.]" In fact,

14

American states, "[d]efendant CRS and American have had many conflicts and disputes over the years."  Doc. Ent. 62 at 9.  American suspects that the July 17, 2006 subpoena is meant to "harass American and obtain confidential information[.]" Doc. Ent. 62 at 9.

Third, even if the information sought was deemed relevant under Fed. R. Civ. P. 26 to a claim or defense in the pleadings, I am persuaded that, at this time, the information requested is not substantially necessary under Fed. R. Civ. P. 45(c)(3)(B).  Although the Court is not convinced of American's allegation that defendant CRS' ulterior motive for the document subpoena of obtaining valuable and confidential commercial information, Doc. Ent. 62 at 11, at this point, any need that defendants have for this information is outweighed by the potential harm of its release to American's business.

Here, I note defendants' reliance upon ERISA § 402 and their argument that "ERISA has been violated[.]"  Doc. Ent. 63-1 at 7-8.  I also recall American's counsel's suggestion at the hearing that defendants pursue a motion for summary judgment under ERISA § 402 (29 U.S.C. § 1102 "Establishment of plan").  At the hearing, American's counsel contended that a prerequisite to the instant motion would be for defendants to file a summary judgment motion under ERISA on the basis of noncompliance with Section 402 (29 U.S.C. § 1102 "Establishment of plan").  Defense counsel stated that he has not filed a motion for summary judgment; however, he mentioned defendant Maldonado's December 5, 2006 motion to file counterclaim.  (Doc. Ent. 71.

In that motion, defendant Maldonado alleges that "[p]laintiffs have an obligation to set their policies, procedures, interpretations in writing under ERISA [29 U.S.C. § 1104 ("Fiduciary duties")][,]" and "[p]laintiffs through their fiduciaries have breached their fiduciary duty to

15

maintain adequate plan documentation, plan procedure, and plan interpretation." Doc. Ent. 71-1 at 9-10. The proposed counterclaim for breach of fiduciary duty is based upon 29 U.S.C. § 1102 ("Establishment of plan"),[4] Subsections (a)(1) and (b). Doc. Ent. 71-2 ¶¶ 11-12. Among the relief sought by defendant Maldonado's motion is that plaintiffs be required to dismiss the original and amended complaint for plaintiffs' breach of fiduciary duties. Doc. Ent. 71-1 at 12. This form of relief is also repeated in the proposed counterclaim. Doc. Ent. 71-2 at 6. Judge Lawson is scheduled to hear defendant Maldonado's motion on February 21, 2007. (Doc. Ent. 72). If such a motion were decided in favor of defendant Maldonado, then it appears that the information requested in the document subpoena would not be necessary.[5]

---

[4]"Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C.A. § 1102(a)(1). Furthermore, "[e]very employee benefit plan shall–

(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,

(2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),

(3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and

(4) specify the basis on which payments are made to and from the plan.

29 U.S.C. § 1102(b).

[5]The Court recognizes that the discovery cutoff is currently set for March 15, 2007 (Doc. Ent. 69) and that a ruling from the Court following the February 2007 hearing may not be entered before the close of discovery. Still, in light of the sensitive nature of the information sought, I conclude it is better to proceed with caution and wait until the information is necessary before ordering it released. If, after Judge Lawson's ruling on the motion to amend to add a

16

**E.      Therefore, the Court need not address whether production would be burdensome.**

In light of the foregoing conclusions, I need not address American's argument that "[p]roduction of the requested documents would place an undue burden on American[,]" as "disclosure of the requested information would substantially damage American, both in loss of business and employees/trades people, in an amount in excess of $50,000."  Doc. Ent. 62 at 11.

**II.      ORDER**

In accordance with the foregoing opinion, defendants' motion to compel discovery (Doc. Ent. 58) is DENIED WITHOUT PREJUDICE.  Furthermore, defendants' and American's requests for reimbursement of costs and fees associated with this motion are DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten (10) days from the date of service of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/22/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 22, 2006.
>
> s/Eddrey Butts
> Case Manager

---

counterclaim for breach of fiduciary duty, defendants still seek the information sought in the document subpoena, they are invited to petition the Court, if need be, for an extension of discovery for the purpose of obtaining the information sought in the document subpoena.

17